IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GABRIEL ROSA-DIAZ,   ) | |
| ) | |
| Plaintiff,   ) | |
| ) | Case No. 1:22-cv-239 |
| v.   ) | |
| ) | |
| OBERLANDER, Superintendent of   ) | |
| S.C.I. Forest, *et al*.,   ) | |
| ) | |
| Defendants.   ) | |

## MEMORANDUM ORDER

### I.     BACKGROUND

In this *pro se* civil action, Plaintiff Gabriel Rosa-Diaz, an inmate at SCI-Phoenix and former inmate at SCI-Forest, has sued numerous employees of the Pennsylvania Department of Corrections, alleging that the Defendants violated his civil rights in various respects during the course of his confinement.  Pending before the Court is a motion to dismiss certain claims that he is asserting primarily against five (5) Defendants:  SCI-Forest Superintendent Oberlander, Central Office Chief Hearing Examiner Moore, SCI-Forest Hearing Examiner Fiscus, SCI-Forest Chief Hearing Officer Moslak, and SCI-Forest Unit Manager Perry (hereafter, "Moving Defendants").  ECF No. [30]. The matter has been referred to Chief United States Magistrate Judge Richard A. Lanzillo for pretrial proceedings in accordance with the Magistrate Judges Act, 28 U.S.C. §636(b)(1), and Local Civil Rule 72.

On August 28, 2023, Judge Lanzillo issued a Report and Recommendation ("R&R") in which he concluded that this Court should grant the pending motion in part and deny it in part. As to Defendants Fiscus, Moslak, Moore, and Perry, Judge Lanzillo found that the following claims were being asserted:

1

- 14th Amendment due process claims against Fiscus, Moslak, Moore, and Perry;

- 8th Amendment "deliberate indifference" claims against Fiscus, Moore, and Perry;

- 1st Amendment retaliation claims against Fiscus, Moslak, Moore, and Perry relating to Plaintiff's Misconduct 487646;

- a 1st Amendment Retaliation claim against Fiscus relating to Misconduct 787837;

- 8th Amendment "calculated harassment" claims against Fiscus, Moore, and Perry;

- federal civil conspiracy claims against Fiscus, Moslak, Moore, and Perry;

- a state law claim against Fiscus for intentional infliction of emotional distress;

- a claim against Moslak for denying Plaintiff access to courts; and

- claims against Moore and Perry for harassment and discrimination.

ECF No. 47 at 10, 36.  Based on his analysis of these claims, Judge Lanzillo concluded that each one failed to state a viable cause of action except for one, *to wit*:  Plaintiff's First Amendment retaliation claim against Hearing Examiner Fiscus arising from Fiscus' finding that Plaintiff was guilty of the offense charged in Misconduct 787837.  ECF No. 47 at 36.

As to Superintendent Oberlander, Judge Lanzillo interpreted Defendants' motion as requesting dismissal of the following claims:

- all claims arising from Oberlander's involvement in Misconduct No. 787837;

- all claims predicated on Oberlander's actions in allegedly directing Fiscus to find Plaintiff guilty relative to Misconduct No. 489646;

- all due process claims arising from Plaintiff's placement in and/or transfer to the Behavior Management Unit ("BMU") at SCI-Forest and/or the Intensive Management Unit ("IMU") at SCI-Phoenix; and

2

- all due process claims arising from Plaintiff's inclusion on the RRL.

ECF No. 47 at 37.  Judge Lanzillo recommended that each of these claims be dismissed.  *Id*.

**II.    DISCUSSION**

Plaintiff has filed lengthy objections to the R&R, ECF No. [52], which the Court has reviewed in full.  Although Plaintiff is an articulate writer, his arguments are prolix and frequently repetitive.  In addition, his objections largely consist of a detailed restatement of the allegations in his complaint, as opposed to persuasive argument as to how he believes the Chief Magistrate Judge erred in his analysis of the claims.

A.

Plaintiff's most developed arguments pertain to his procedural due process claims, which arise in part from misconduct reports that were filed on February 15, 2022 (Misconduct 560168), March 25, 2022 (Misconduct 489646), and April 18, 2022 (Misconduct 787831).  Plaintiff has alleged that, in each instance, the charges of misconduct were false, the hearing examiner was biased, the proceedings (including appeals) were unfair, and he was wrongly found to be guilty. He claims that the false misconducts resulted in him being placed in disciplinary confinement for period of 30 days, 90 days, and 45 days, respectively.  ECF No. 19, ¶¶ 27, 53, 78.  Plaintiff's second misconduct also resulted in his demotion to phase 4 of the BMU program.  *Id*., ¶56.

Judge Lanzillo recommends that the procedural due process claims related to these grievances be dismissed because, in his view, Plaintiff has not alleged the deprivation of a protected interest that would implicate procedural due process concerns.  *See* ECF No. 47 at 12 (citing *Hill v. Borough of Kutztown,* 455 F.3d 225, 233-34 (3d Cir. 2006), and discussing the elements of a procedural due process claim).  This Court concurs.

"In order to invoke the protection of the Due Process Clause of the Fourteenth Amendment, a plaintiff must first establish the existence of a [property or] liberty interest for which the protection is sought." *Washington v. Wetzel*, Civil Action No. 18-1390, 2022 WL 1782509, *11 (W.D. Pa. June 1, 2022) (citing *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) and *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000)). The Fourteenth Amendment does not itself create a substantive right or liberty interest proscribing an inmate's placement in disciplinary custody. *See Sandin v. Connor*, 515 U.S. 472, 484 (1995). Instead, the focus in this case is on whether Plaintiff alleged the deprivation of a state-created liberty interest for which procedural due process protections were required. *See Wilkinson*, 545 U.S. at 221 (recognizing that a liberty interest may arise from the Constitution itself or from an expectation or interest created by state laws or policies). In the prison setting, state-created liberty interests are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest. *Sandin*, 515 U.S. at 486; *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002). Here, Judge Lanzillo correctly determined that the periods of disciplinary confinement to which Plaintiff was subjected did not impose an "atypical and significant hardship" giving rise to a protected liberty interest. *See* ECF No. 47 at 13 (citing authority and noting that "[t]he Supreme Court and our Court of Appeals have held that placements in disciplinary custody for periods far longer than those experienced by Rosa-Diaz did not implicate a liberty interest protected by the Due Process Clause").

4

In his objections, Plaintiff repeatedly insists that he had a liberty interest in remaining free of misconduct charges "in order to be able to make parole." ECF No. 52 at 3. But under Pennsylvania law, the parole board has vast discretion to grant or deny parole, *see* 61 Pa. C.S.A. §6137, and "[n]othing in [Pennsylvania's] code requires the parole board to deny parole in the face of a misconduct record or to grant parole in its absence." *Fantone v. Latini*, 780 F.3d 184, 190 (3d Cir. 2015), *as amended* (Mar. 24, 2015). Because the parole board has such "complete discretion," Plaintiff lacks any constitutionally protected liberty interest in being paroled. *See Fantone,* 780 F.3d at 190 (holding that inmate's placement in the RHU and loss of parole did not infringe his liberty interests, even though his misconduct charges -- of which he was ultimately cleared -- "probably caused the Parole Board to rescind his parole"); *see also Saleem v. Brugart*, No. 20-1610, 2022 WL 17336208, at *3-4 (3d Cir. Nov. 30, 2022) (disciplinary confinement, which prevented inmate from attending mandatory programming and allegedly impeded his ability to seek parole, thereby extending his sentence, did not state a Fourteenth Amendment due process violation).

Plaintiff also complains that, as a result of his misconducts, he suffered other adverse consequences, such as being demoted from phase 2 of the BMU and losing all related privileges, including his prison job, structured out-of-cell activity time, telephone privileges, access to radio, access to television and gaming devices, "lower incentive prices," and the use of the kiosk to send and received emails. ECF No. 52 at 5-6; ECF No. 19, ¶¶56, 109-111. However, these inconveniences do not involve "atypical and significant hardship" as compared to the ordinary incidents of prison life, and prisoners generally have no recognized liberty interest in particular programming or in the type of privileges Plaintiff claims to have lost. *See, e.g., Washington v. Wetzel*, Civil Action No. 18-1390, 2022 WL 1782509, *13 (W.D. Pa. June 1, 2022) ("Plaintiff's

5

placement in the [Secure Residential Treatment Unit] did not implicate a protected liberty interest and therefore neither Plaintiff's failure to advance in the SRTU program, nor decisions to return Plaintiff to a prior phase of the program, violated due process"); *McDowell v. Litz*, 419 F. App'x 149, 152 (3d Cir. 2011) (dismissing due process claim of inmate who claimed that, as a result of the disciplinary proceeding, he was sanctioned to a 90–day suspension of his telephone privileges and the loss of his institutional employment, as inmate had no protected interest in either one); *Gonzelez v. Zickenfoose*, Civil No. 3:CV-13-2716, 2014 WL 257850, at *2 (M.D. Pa. Jan. 23, 2014) (the temporary loss of commissary, visitation and email privileges do not "implicate a protected liberty interest as they do not result in any atypical or significant hardships in relation to the ordinary incidents of prison life").

Plaintiff's due process claim also appears to be predicated on allegations that, due to a personal grudge, Oberlander arranged for Plaintiff to be transferred from the BMU at SCI-Forest to the IMU at SCI-Phoenix, where he is currently housed. Progression through the IMU program involves thirty days at phase 6, nine months at phase 5, nine months at phase 4, nine months at phase 3, eight months at phase 2, and one year at phase 1. ECF No. 19, ¶120. Plaintiff states that the conditions in the IMU are more restrictive than in the BMU, as illustrated by the "IMU Services and Privileges Chart" appended to his Amended Complaint. *See* ECF No. 19-6. He alleges, for example, that "[i]n the IMU program there is only one (1) hour of [out of cell] structure[d] activities/group a week and that is only for phase 5 inmates, and there are no religious services provided . . . ." *Id*. ¶118. Moreover, Plaintiff claims that he has been classified as a "modified" phase 6 inmate by the Program Review Committee as retaliation for his refusal to participate in the required IMU programming. *Id*. ¶¶121-124. As such, Plaintiff cannot hold a prison job, cannot use the phone or kiosk, cannot purchase commissary items

6

(including hygiene products), is restricted from television, radio, and tablet privileges, and remains on the RRL, which makes him ineligible for parole. *Id*., ¶¶125- 128. Plaintiff claims that, "[b]ecause the unit team refuse[s] to remove [him] from [the] IMU program, [he] is being forced to live on the RRL designation under the most cruel conditions, as Plaintiff is being housed with a bunch of mentally ill inmates whom are constantly screaming and making noise 24 hours a day 7 days of the week," which disrupts his sleep and interferes with him listening to the cell block television, reading or writing. *Id*. ¶130. Plaintiff states that he is "being subjected to … lock down 22 hours a day 7 days of the week," cannot receive contact visits, and must exercise alone in a prison yard cage the size of "a horse's stall," without any equipment. *Id*. ¶131-132. "In all," Plaintiff claims that the IMU program is depriving him of "many privileges that [he] was receiving in the BMU program" and keeping him ineligible for parole. *Id*. ¶133. He alleges that his "prolonged confinement in RRL designation and SL-5 housing unit are deteriorating [his] mental health" and subjecting him to a "substantial risk of serious future psychological and physical harm, as the veins [in his] left leg die off and the blood is not able to circulate due to lack of movement and exercise . . . ." *Id*. ¶134.

In his R&R, Judge Lanzillo recommended dismissal of any claims against Oberlander arising out of Plaintiff's placement and/or transfer to the IMU. Judge Lanzillo reasoned that:

> Rosa-Diaz does not have a constitutional right to any particular security classification or the right to a particular housing unit or facility. *See Wilkinson*, 545 U.S. at 221-22 (stating that the Constitution does not give rise to a liberty interest in avoiding transfers to more adverse conditions of confinement); *see also Lawson v. Carter*, 2016 WL 6694860, at *2 (M.D. Pa. Nov. 14, 2016) ("[I]t is well-established the prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment."). Thus, Rosa-Diaz' allegations do not support that he was deprived of any liberty or property interest because of his placement in the BMU, his inclusion on the RRL list, and/or his reassignment to the IMU. Therefore, his due process and other claims based on these actions should be dismissed.

ECF No. 47 at 36.

7

In his objections, Plaintiff suggests that Judge Lanzillo erred in failing to recognize that his transfer to the IMU at SCI-Phoenix resulted in "atypical and significant hardships" due the restrictive conditions he is living under. Plaintiff maintains that Judge Lanzillo failed to properly apply the holding of *Wilkinson v. Austin*, wherein the Supreme Court found that Ohio prisoners had a protected liberty interest in avoiding confinement in the state's most restrictive "Supermax" facility. *See* 545 U.S. 209, 223-24 (2005). Plaintiff suggests that his liberty interests were similarly infringed when he was placed in the IMU and kept on the RRL.

Plaintiff's objection is not well taken, inasmuch as *Wilkinson* involved circumstances that are materially distinguishable from facts alleged here. Central to the Court's holding in *Wilkinson* were the supermax facility's extreme conditions, which included a "prohibition on almost all human contact," indefinite periods of confinement in that institution, and the inmates' automatic disqualification for parole consideration. 545 U.S. at 223-24. As is clear from the Amended Complaint and the IMU Services Chart appended thereto, Plaintiff's current level of restrictions are not as extreme as those involved in *Wilkinson*, nor are they of indefinite duration. Even at phase six, an IMU inmate is entitled to one phone call per week, weekly or monthly video visits, in-cell programming, and weekly contact with the unit manager. ECF No. 19-6 at 2. Moreover, Plaintiff can progress through the various IMU phases with an ever-increasing level of privileges, movement, and social interaction; by his own admission, the reason he is not currently doing so is because he has steadfastly refused to participate in the required IMU programs. ECF No. 19, ¶¶122-126; *see also* ECF No. 19-6.[1] And based on the fact alleged here, neither Plaintiff's placement on the RRL nor his immediate ineligibility for parole give rise to a

---

[1] For the reasons discussed, many of the privileges of which Plaintiff is currently deprived -- such as phone access, employment, gaming, radio access and the like, do not involve "atypical and significant hardship." *See McDowell,* 419 F. App'x at 152; *Gonzelez,* 2014 WL 257850, at *2.

plausible due process violation. *See Bowen v. Ryan*, 248 F. App'x 302, 304 (3d Cir. 2007) ("Placement on [the RRL] did not deprive [the inmate] of his liberty, privileges, or any other constitutionally protected liberty interest."); *Kendrick v. Little*, No. 2:23-CV-187, 2023 WL 6130605, at *5 n.3 (W.D. Pa. Sept. 18, 2023) ("It is well established that neither solitary confinement nor placement on the RRL by itself impacts a protected liberty interest, and therefore due process concerns are not triggered."); *Bramble v. Wetzel*, Civil No. 4:20-cv-2394, 2022 WL 55021, at *9-10 (M.D. Pa. Jan 5, 2022) (prisoner's placement on RRL does not by itself implicate due process concerns and, even if a longer-term RRL placement does implicate such concerns, periodic reviews by the PRC comport with the minimum constitutional standards for due process); *see also Saleem v. Brugart*, No. 20-1610, 2022 WL 17336208, at *3-4 (3d Cir. Nov. 30, 2022) (disciplinary confinement that deprived inmate of ability to attend mandatory programming and affected parole resulting in extended sentence does not state a Fourteenth Amendment due process violation); *Fantone,* 780 F.3d 190 (inmate's retention in the RHU and rescission of his parole did not infringe his liberty interests).

In sum, as it relates to Plaintiff's procedural due process claims, this Court is in agreement with Judge Lanzillo's analysis and recommendations. Only one point of dissention exists:  there is some ambiguity in the Defendants' motion as to whether they sought the dismissal of *all* procedural due process claims arising out of Plaintiff's placement in the BMU/IMU and/or on the RRL, or whether Defendants sought only the dismissal of such claims as asserted against Oberlander.  The Chief Magistrate Judge perceived it was the latter; but Defendants' motion can be interpreted as seeking the former.  Although Defendants filed no objections to the R&R, the Court has the independent duty, pursuant to 28 U.S.C. §1915(e)(2), to dismiss any causes of action that fail to state a cognizable claim.  Because neither Plaintiff's

9

placement in the IMU nor his status on the RRL involved the deprivation of a protected liberty interest, he has no cognizable due process claim against any Defendant who was involved in these aspects of his confinement. This would appear to include not only Oberlander, but also Defendants Marsh, Bickle, and Little, whom Plaintiff identifies as the individuals responsible for his IMU placement. *See* ECF No. 19, ¶¶81, 82, 98, 106; *see also id.* at 14-16, ¶¶25, 27-32. Thus, because Plaintiff has not stated a viable due process claim against Defendants Marsh, Bickel, and Little based on their involvement in placing or keeping Plaintiff in the IMU and/or maintaining him on the RRL, those claims will be dismissed.

B.

Plaintiff also takes issue specifically with the dismissal of his due process claims against Defendant Moore. These claims arise from Grievance 978901, which Plaintiff filed on May 3, 2022 concerning his anticipated removal from the BMU and placement into the IMU. ECF No. 19-3 at 3-4. The grievance was denied by SCI-Forest's grievance coordinator on the grounds that Plaintiff was "being considered for removal from the BMU" but "[could not] grieve something that [had] not happened yet." *Id.* at 2. Plaintiff then took an appeal, which Oberlander denied on May 16, 2022. *Id.* at 7. On final review, Defendant Moore dismissed Plaintiff's appeal on the ground that the grievance process "is not intended to address hypothetical scenarios or perceived outcomes." *Id.* at 9.

Judge Lanzillo construed the Amended Complaint as asserting claims against Moore for alleged conspiracy, discrimination, harassment and retaliation, as well as alleged violation of Plaintiff's Eighth Amendment and Fourteenth Amendment due process rights. After analyzing each putative cause of action, Judge Lanzillo recommended that all of the claims against Moore be denied.

10

Plaintiff now objects to Judge Lanzillo's conclusions relative to Plaintiff's procedural and substantive due process claims.  He appears to be arguing that Moore's dismissal of his grievance was unconstitutional because, by the time she issued her ruling, Plaintiff had in fact been transferred to the IMU and was thereby "personally affected" by the transfer decision in a non-hypothetical fashion.  In conclusory fashion, Plaintiff insists that Moore "knew" of the "secret conspiracy" against him and "had the power to reverse and remand the grievance" and stop his transfer pending an investigation, but instead she "acquiesced in the conspiracy" by "pre-planting the rejection" of his grievance in order to "prevent an investigation of a known conspiracy." ECF No. 52 at 13.  Plaintiff insist that he has "a liberty interest in preventing a known conspiracy from being caried [sic] out against [him]." *Id*. at 14.

Plaintiff's objections lack merit, as his claims against Moore fail to establish a plausible constitutional violation.  As a general matter, Moore's involvement in the post-incident grievance process is insufficient to establish Moore's liability relative to the conduct that Plaintiff grieved.  *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005).  Additionally, prisoners have no constitutional right to a grievance procedure in the first instance; therefore, allegations that an official wrongfully denied a grievance or grievance appeal fail to support a procedural due process claim.  *Woodell v. Wenerowicz*, 2019 WL 4139264, at *17 (E.D. Pa. Aug. 30, 2019) (citing *Tapp v. Proto*, 404 F. App'x 563, 566 (3d Cir. 2010)).  Moreover, once Plaintiff's conclusory averments are properly discounted, the remaining well-pled factual averments concerning Moore's conduct do not rise to the level of "conscience-shocking" behavior, as is required to state a plausible substantive due process claim.  *See* R&R, ECF No. 47 at 15-16 (citing cases).  Plaintiff's claims against Moore are therefore subject to dismissal.

11

C.

Plaintiff also objects to the recommended dismissal of his claims against Perry. At bottom, Plaintiff alleges that Perry refused to intervene on his behalf and/or refused to report the abuse that Oberlander was perpetrating unless Plaintiff first agreed to withdraw a prior grievance against Oberlander. Plaintiff characterizes this as a "First Amendment attempt at extortion."

Plaintiff's objections fail to establish that he has pled viable claims against Perry. As Judge Lanzillo observed, the U.S. Court of Appeals for the Third Circuit has never recognized Sections1983 liability predicated on a "failure to intervene" theory, other than in the context of excessive force claims. *See* ECF No. 47 at 12 n.2 (citing cases). In addition, the well-pled (*i.e.* nonconclusory) averments in the Amended Complaint fail to establish Perry's personal involvement in any constitutional tort. *See id.* at 14-15 n.3 (and authority cited therein). Notwithstanding Plaintiff's assertion to the contrary, DC-ADM 001 (addressing "Inmate Abuse")[2] created no obligation on Perry's part to report "abusive" acts supposedly perpetrated by Oberlander, because the Amended Complaint fails to establish that Oberlander engaged in "abuse" within the meaning of the DOC's Policy Statement. Finally, Plaintiff's assertion of First Amendment "extortion" is overstated and belied by the allegations in his own pleading, which state only that Perry suggested, "If you withdraw that grievance on Oberlander I might be able to talk to him and get him to back off of you." ECF No. 19 at 5, ¶60. For purposes of establishing a First Amendment retaliation claim, Plaintiff has not alleged that Perry himself undertook any adverse action that would be sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (discussing elements

---

[2] *See* https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/001%20Inmate%20Abuse.pdf.

12

of a First Amendment retaliation claim). Accordingly, the claims against Perry will be dismissed.

D.

Plaintiff also objects that his state law claims against Defendants Fiscus and Oberlander for intentional infliction of emotional distress should be permitted to proceed. Judge Lanzillo recommended the dismissal of the IIED claim against Fiscus both because Plaintiff had failed to allege extreme and outrageous conduct and because Plaintiff had not alleged any physical manifestation of emotional distress. *See* ECF No. 47 at 27-29 (citing authority). With respect to Oberlander, Judge Lanzillo recommended, in relevant part, the dismissal of all claims predicated on Oberlander's involvement in Misconduct 787837 as well as all claims arising from Oberlander's alleged direction to find Plaintiff guilty on Misconduct 489646.

Plaintiff asserts in his objections that he "is not alleging physical injury, harm or illness related to the severe emotional distress, but rather severe emotional distress injury in relation to [his] claims of liberty interest of not being able to make parole" and "from being removed from BMU to IMU. . . ." ECF No. 52 at 15-16. Plaintiff explains that he is "claiming IIED of an injury that was caused . . . due to the Defendants having prolonged [his] confinement in the SL-5 housing unit and RRL designation," which he claims has "severely limited [his] movement and exercise" and "caused the veins on [his] left leg to die off" and has also caused his "left leg to remain fat, swollen, and in pain." *Id.* at 16.

Having fully considered Plaintiff's arguments, the Court finds no grounds for disagreement with the Chief Magistrate Judge's analysis as it relates to Plaintiff's claims for the intentional infliction of emotional distress. Accordingly, those claims will be dismissed.

E.

Plaintiff's remaining objections require little discussion.  He appears to argue that the Chief Magistrate Judge improperly failed to address his claims under the ADA and Section 504 of the Rehabilitation Act.  Relatedly, he faults Judge Lanzillo for disallowing an amendment of his pleadings that would have bolstered his ADA and Rehabilitation Act claims.  However, the Defendants did not challenged any such claims in their motion to dismiss, so Judge Lanzillo had no reason to address them.  At this juncture, at least, Plaintiff's putative ADA and RA claims remain in the case.

Plaintiff's other arguments relative to his First Amendment, harassment, conspiracy, and discrimination claims involve little more than conclusory assertions about the merits of the claims.  As to these claims, the Court finds the Chief Magistrate Judge's analysis to be fair, accurate, and entirely persuasive.  The undersigned therefore finds no basis for disagreement with Judge Lanzillo's recommendations.

### III.   CONCLUSION

Accordingly, after *de novo* review of the documents in the case, including the amended complaint, the pending motion to dismiss and all related filings, the Chief Magistrate Judge's Report and Recommendation, and Plaintiff's objections to thereto,

IT IS ORDERED, this 26th day of September, 2023, that the pending motion to dismiss, ECF No. [30], is GRANTED in part and DENIED in part, as follows:

1. As to Plaintiff's First Amendment retaliation claim against Defendant Fiscus based upon Misconduct 787837, the motion is DENIED;

14

2. As to all other claims in the Amended Complaint against Defendants Fiscus, Moslak, Moore, and Perry, the motion is GRANTED, and said claims are DISMISSED, and Defendants Moslak, Moore and Perry shall be terminated as parties to this case;

3. As to all claims against Defendant Oberlander arising from his involvement in Misconduct 787837 and/or based upon Oberlander's alleged direction that Fiscus find Plaintiff guilty of Misconduct 489646, the motion is GRANTED, and said claims are DISMISSED; and

4. As to all Fourteenth Amendment due process claims arising from Plaintiff's placement in the BMU and/or the IMU and/or his inclusion on the RRL, the motion is GRANTED and said claims are DISMISSED as against all Defendants.

IT IS FURTHER ORDERED that, insofar as the claims being dismissed are incapable of remediation through further amendment, the Court's dismissal of those claims is with prejudice and without leave for further amendment.

IT IS FURTHER ORDERED that the Report and Recommendation issued by Chief United States Magistrate Judge Richard Lanzillo on August 28, 2023, ECF No. [47], as modified herein, is hereby adopted as the opinion of this Court. Plaintiff's objections to the Report and Recommendation, ECF No. [52], are OVERRULED.

SUSAN PARADISE BAXTER
United States District Judge